UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------- X
NOVA GROUP, INC., as Trustee, Sponsor            :
and Named Fiduciary of the CHARTER OAK
TRUST WELFARE BENEFIT PLAN,                      :

              Petitioner,            : Case No. 11-CV-342-AWT

     -against-
                                                                                 :
UNIVERSITAS EDUCATION, LLC,

              Respondent.         :

---------------------------------------------------------- X

**RESPONDENT'S REPLY ON ITS MOTION TO DISMISS OR TRANSFER VENUE**

## TABLE OF CONTENTS

<div style="text-align: right">**PAGE**</div>

TABLE OF AUTHORITIES ................................................................................................................ ii

I.  THIS COURT LACKS JURISDICTION OVER UNIVERSITAS ........................................ 1

    a.  ERISA cannot provide a basis for personal jurisdiction ............................................... 1

    b.  Universitas has not transacted business in Connecticut, nor sought to avail itself of this state's laws ............................................................................................................ 4

II.  THIS ACTION SHOULD BE TRANSFERED TO THE SOUTHERN DISTRICT OF NEW YORK ................................................................................................................................. 6

    a.  Transfer is warranted because this Court lacks jurisdiction over Universitas and, alternatively, in consideration of the interests of efficiency and justice ....................... 6

    b.  The first-filed doctrine does not apply in this action ................................................... 8

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*AFA Dispensing Group B.V. v. Anheuser-Busch, Inc.*,
   740 F. Supp.2d 465 (S.D.N.Y. 2010)..................................................................................8

*Caplan v. Stein*,
   08 CV 1731 (CFD), 2009 WL 1407064 (D. Conn. May 18, 2009)..........................................5

*Cooperative Centrale Raiffeisen-Boreenleen Bank, B.A. v. Northwestern Nat'l Ins. Co of Milwaukee, Wisconsin*,
   778 F. Supp. 1274 (S.D.N.Y. 1991)................................................................................ 8-10

*Crow Construction Co. v. Jeffrey M. Brown Associates, Inc.*,
   01 Civ. 3839 (AGS), 2001 WL 1006721 (S.D.N.Y. Aug. 31, 2001) .......................................7

*Cummings & Lockwood, P.C. v. Simses*,
   Civ. 01 CV 422 (PCD), 2001 WL 789313 (D. Conn. July 5, 2001).........................................8

*Dethier v. Nat'l Liquidators*,
   09 CV 1507 (WWE), 2010 WL 991573 (D. Conn. Mar. 18, 2010) ..........................................6

*Finkel v. A.B. Recycling LLC*,
   08 CV 661 (TCP), 2010 WL 3218387 (E.D.N.Y. May 5, 2010)................................................3

*Girl Scouts of the USA v. Steir*,
   02 CV 4830 (KMW), 2003 U.S. Dist LEXIS 24582 (S.D.N.Y. Sept. 4, 2003) .......................9

*Gordon v. Oxford Health Ins., Inc.*,
   04 Civ. 6691 (WHP), 2005 WL 292741 (S.D.N.Y. Feb. 7, 2005) ...........................................2

*Guilbert v. Gardner*,
   480 F.3d 140 (2d Cir. 2007).....................................................................................................2

*Laxman v. Shapiro*,
   06 Civ. 11408 (DLC), 2006 WL 3423807 (S.D.N.Y. Nov. 29, 2006) ....................................10

*Lever Bros. Co. v. Procter & Gamble Co.*,
   23 F.Supp.2d 208 (D. Conn. 1998).........................................................................................7

*Marcella v. Capital Dist. Physicians' Health Plan, Inc.*,
   293 F.3d 42 (2d Cir. 2002).......................................................................................................2

*Matthew 25 Ministries, Inc. v. Corcoran*,
   771 F.2d 21 (2d Cir. 1985).......................................................................................................2

*MDPhysicians & Associates, Inc. v. State Bd. of Insurance*,
  957 F.2d 178 (5th Cir. 1992) ................................................................................................2

*Muller v. Walt Disney Prods.*,
  822 F. Supp. 1033 (S.D.N.Y. 1993) ......................................................................................8

*N.Y. Marine & Gen. Ins. Co. v. La Farge North Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010) ............................................................................................ 8-9

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*,
  204 Fed. Appx. 40 (2d Cir. 2006) .........................................................................................7

*Pettibone Tavern LLC v. Commissioner of Internal Revenue*,
  pending ..................................................................................................................................8

*Pro Performance Corporate, Inc. v. Goldman*,
  804 A.2d 248 (Conn. Super. Ct. 2002) ..................................................................................5

*Tyson v. Bowes Long-Term Disability Plan*,
  07 CV 3105 (DMC), 2007 WL 4365332 (N.J. Dec. 11, 2007) ..............................................3

*U.S. Offshore, Inc. v. Seabulk Offshore, Ltd.*,
  753 F. Supp. 86 (S.D.N.Y. 1990) ..........................................................................................9

**STATUTES**

28 U.S.C. § 1404(a) ......................................................................................................................6, 8

29 U.S.C. §1002 ................................................................................................................................2

29 U.S.C. §1003 ................................................................................................................................2

29 U.S.C. § 1132 ...............................................................................................................................3

Conn. Gen. Stat. § 52-59b ................................................................................................................4

Conn. Gen. Stat. § 52-418(a) ...........................................................................................................3

Respondent Universitas Education, LLC ("Universitas") replies to Petitioner Nova Group, Inc.'s ("Nova Group") Opposition to Universitas' Motion to Dismiss or Transfer Venue ("Nova Group Opp.") as follows:

## I. THIS COURT LACKS JURISDICTION OVER UNIVERSITAS

Universitas' contacts with Connecticut are virtually non-existent, and result entirely from Universitas' contacts with Petitioner as a result of Petitioner's wrongful refusal to pay certain insurance death benefits to Universitas – as it was required to do.[1] To add insult to injury, Petitioner now seeks to benefit from its wrongful refusal to pay by claiming that personal jurisdiction exists over Universitas in Connecticut simply because Petitioner, as Trustee, failed to carry out its fiduciary duties to Universitas. Further, in a bizarre argument, Petitioner now claims that the Employee Retirement Income Security Act ("ERISA") confers personal jurisdiction over Universitas, even though ERISA is not applicable to this action since, as Petitioner acknowledges, it does not operate an ERISA plan and has not brought this action pursuant to ERISA.

   *a. ERISA cannot provide a basis for personal jurisdiction*

Petitioner's assertion that ERISA creates personal jurisdiction over Universitas in Connecticut ignores three facts that, individually or collectively, are fatal to its argument. First, by Petitioner's own admission, the Charter Oak Trust Welfare Benefit Plan ("Plan") is **not an ERISA plan**; second, even if it were, Petitioner did not commence this action pursuant to ERISA; third, the ERISA provision to which Petitioner cites relates only to nationwide service of process, which is obviously different from personal jurisdiction.

---

[1] As the Court is aware, an arbitrator jointly selected by the parties has already found Petitioner – a **Trustee** holding the benefits on Universitas' behalf – liable to Universitas in the amount of $26.5 million. *See* March 10, 2011 Universitas Memorandum of Law in Support of Motion to Dismiss or Transfer Venue ("March 10 Universitas Memo") at 6-9 (Docket Entry No. 13).

1

Petitioner acknowledges that the Plan was not created, established, or maintained by an employer (in other words, Petitioner and its affiliates operate the Plan without employer involvement). *See*, *e.g.*, Nova Group Petition to Vacate the Arbitration Award ("Nova Group Petition") at 32 (Docket Entry No. 1) (Plan is "not strictly speaking an 'ERISA benefit plan' because it was not created, established, or maintained by an employer[.]"). This is significant because ERISA does not govern every welfare benefit plan. ERISA governs only those plans that specifically fall within the statute's definition of "employee benefit plan." 29 U.S.C. §1003. ERISA defines "employee benefit plan" as "any plan, fund, or program which was heretofore or is hereafter <u>established or maintained by an employer</u> or by an employee organization, or by both." 29 U.S.C. §1002(1), (2), (3) (emphasis added). As the statute and case law make clear, <u>if an employer has not created, established or maintained the plan, ERISA cannot apply</u>. For instance, in *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 47-49 (2d Cir. 2002), the issue was whether a health insurance plan provided by a chamber of commerce qualified as an ERISA plan. Then-Judge Sotomayor found that it did not, because the chamber of commerce, which established and operated the plan, was not an employer. *Marcella*, 293 F.3d at 47-49. *See also Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007); *Matthew 25 Ministries, Inc. v. Corcoran*, 771 F.2d 21 (2d Cir. 1985); *Gordon v. Oxford Health Ins., Inc.*, 04 Civ. 6691 (WHP), 2005 WL 292741, at *2-3 (S.D.N.Y. Feb. 7, 2005) (health insurance offered through Association of the Bar of the City of New York not governed by ERISA). *See also MDPhysicians & Associates, Inc. v. State Bd. of Insurance*, 957 F.2d 178, 183 (5th Cir. 1992) ("Just because a plan exists, however, does not necessarily mean that the plan is an ERISA plan") (internal quotations and citation omitted).

Moreover, even if ERISA did govern the Plan (which is does not), Petitioner did not commence this action pursuant to 29 U.S.C. § 1132, the ERISA provision that arguably allows for nationwide service of process.  This action was commenced pursuant to Connecticut state law, specifically Conn. Gen. Stat. § 52-418(a).  *See, e.g.*, Nova Group Opp. at 3-4.  Of course, ERISA's service of process provision only applies to ERISA claims.  *See* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States … ") (emphasis added); *see also Finkel v. A.B. Recycling LLC*, 08 CV 661 (TCP), 2010 WL 3218387, at * 3 (E.D.N.Y. May 5, 2010).[2]  This action is a state-law vacatur claim, not an ERISA claim (which Petitioner could not bring in any event because it is not an ERISA plan).

Finally, Petitioner's personal jurisdiction argument fails because even if Petitioner were operating an ERISA plan and bringing an ERISA claim, there must still exist minimum contacts in the forum state to permit personal jurisdiction.  This is confirmed by Petitioner's primary legal authority, *Tyson v. Bowes Long-Term Disability Plan*, 07 CV 3105 (DMC), 2007 WL 4365332, at *4 (N.J. Dec. 11, 2007) (Nova Group Opp. at 3). Minimum contacts can only be found where a party "*purposefully* directed his activities at residents of the forum[.]" *Id.* (quoting *Saudi v. Acomarit Mars. Servs., S.A.*, 114 Fed. Appx. 449, 453 (3d Cir. 2004) (emphasis in original).  In other words, the availability of nationwide service of process does not confer personal jurisdiction in a given case.  For reasons discussed below and at greater length in Universitas' March 10 Motion to Dismiss or Transfer, Universitas' contacts with Connecticut are not purposeful, in that they were necessitated by Petitioner's wrongful conduct.

---

[2] Notably, none of the cases cited by Petitioner involve nationwide service of process in the context of confirming or vacating an arbitration award.  *See* Nova Group Opp. at 3-6.

    b.   *Universitas has not transacted business in Connecticut, nor sought to avail itself of this state's laws*

In his Arbitration Award, the Arbitrator found that Petitioner, as Trustee of the death benefits for which Universitas is the sole, irrevocable beneficiary, breached its fiduciary duties to Universitas and owes Universitas $26.5 million.  March 10 Declaration of Paula K. Colbath ("March 10 Colbath Decl."), Ex. 6 at 13-14 (Docket Entry No. 14).  Petitioner now has the audacity to assert that as a result of **its** reprehensible conduct, which forced Universitas to communicate with Petitioner in Connecticut to obtain its money, this state somehow has jurisdiction over a New York entity that has never transacted any business in Connecticut and that arbitrated its claims against Petitioner entirely in New York.  Since Universitas' few "contacts" in Connecticut were forced by Petitioner and its wrongful conduct, Universitas did not purposefully avail itself of Connecticut's laws for the purposes of either Conn. Gen. Stat. § 52-59b or the Due Process Clause's "minimum contacts" analysis.  *See* March 10 Universitas Memo at 8-9.

Further, Petitioner badly misrepresents the contacts that Universitas has had in Connecticut.  *See* Nova Group Opp. at 10.  Petitioner first attempts to attribute the contacts of Sash Spencer to Universitas; such an attempt must fail.  Mr. Spencer was a longtime supporter of Universitas, and as such named Universitas the sole, irrevocable beneficiary of certain death benefits under the Plan.  March 10, 2011 Affidavit of Sharon Siebert at ¶7 (Docket Entry No. 15).  But Mr. Spencer was not an officer, director, member or representative of Universitas, *see id*. at ¶¶2,7, and his contacts with the Plan and/or Connecticut cannot be imputed to Universitas.  Universitas was simply named as a beneficiary in paperwork executed by Mr. Spencer and the Plan in 2006.  Universitas did not have any contact with the Plan until after Mr. Spencer's death in June 2008.  Id. at ¶¶ 7-10.  Second, while Universitas' representatives participated in

4

discussions and meetings with Petitioner in an effort to get its money, virtually all of those encounters took place **in New York**.  *See* Transcript of December Arbitration Hearings ("December Tr.") at 688, 698-700, 846, 1180-81 (testimony of Nova Group's General Counsel, Jack E. Robinson, describing two or three lunches at the Harvard Club **of New York City**, and to having met Universitas' former counsel a half-dozen times **in New York**), attached as Ex. 1 to the April 28, 2011 Declaration of Paula K. Colbath ("April 28 Colbath Decl.").[3]  The actual Connecticut contacts on which Petitioner relies to establish jurisdiction (e.g. two meetings between Universitas representative Alex Sgoutas and Nova Group's Donald Trudeau) cannot be the basis for a finding of jurisdiction because, as explained, Petitioner's illegal witholding of the death benefit forced Universitas to contact Petitioner in Connecticut to obtain the millions of dollars to which it is entitled.

Finally, the cases that Petitioner cites (Nova Group Opp. at 9) do not aid its case.  For instance, in *Pro Performance Corporate, Inc. v. Goldman*, 804 A.2d 248 (Conn. Super. Ct. 2002), the defendant contacted plaintiff daily in order to retain the defendant's services.  Universitas never contacted Petitioner on a daily basis, nor did it seek to retain Petitioner's services (in fact, Universitas had nothing to do with Mr. Spencer's designation of Petitioner as Trustee for the death benefits).  Likewise, in *Caplan v. Stein*, 08 CV 1731 (CFD), 2009 WL 1407064 (D. Conn. May 18, 2009), defendant had placed between 50 and 100 phone calls into Connecticut, and e-mailed the plaintiff between 50 and 100 times.  Petitioner does not even attempt to allege such contact here.

---

[3] Universitas will provide the entire transcript from the December hearings (totaling approximately 1,300 pages) upon the Court's request.

5

## II. THIS ACTION SHOULD BE TRANSFERED TO THE SOUTHERN DISTRICT OF NEW YORK

*a. Transfer is warranted because this Court lacks jurisdiction over Universitas and, alternatively, in consideration of the interests of efficiency and justice*

Since this Court lacks jurisdiction over Universitas, it should transfer this case to the Southern District of New York, where a companion case, at a more advanced stage, is pending. There is no dispute that the federal court in New York has jurisdiction over all parties.[4]  In addition, this Court should transfer venue in the interests of efficiency and justice, pursuant to 28 U.S.C. § 1404(a).[5] *Dethier v. Nat'l Liquidators*, 09 CV 1507 (WWE), 2010 WL 991573 at *4 (D. Conn. Mar. 18, 2010).

Petitioner fails to advise this Court that, in the Southern District of New York action, it has filed a petition to vacate that is virtually identical to the petition it has filed here.  April 28 Colbath Decl. at ¶4.  Universitas has also filed a petition in the Southern District of New York to confirm the Arbitration Award.  *Id*. at ¶3.  Moreover, in the New York action, briefing is complete on the respective motions to confirm and vacate.  *Id*. at ¶4.[6]  To require the parties to litigate identical issues in this forum would needlessly waste litigant and judicial resources.

Also, the New York Arbitration that is the subject of the Arbitration Award is continuing in New York, as a result of Petitioner's failure to pay the Arbitration Award issued during Phase One of the Arbitration.  April 28 Colbath Decl. at ¶5.  This means that New York is the forum

---

[4] Petitioner has not contested – and, indeed, cannot contest – personal jurisdiction in the Southern District of New York, because it unilaterally determined that the underlying arbitration take place in New York, New York.  March 10 Universitas Memo at 13.

[5] In its March 10, 2011 Memorandum of Law, Universitas discusses why each of the § 1404(a) factors strongly favors transfer (or is neutral).  *See* March 10 Universitas Memo at 11-17.  Universitas incorporates those arguments by reference, and in this Reply limits its discussion to Petitioner's arguments and omissions.

[6] The Southern District of New York is deferring to this Court on the question of whether Connecticut has jurisdiction over Universitas.  April 28 Colbath Decl. at ¶5, Ex. 4.

for two pending actions involving Universitas and Petitioner.  The interests of efficiency would thus best be served by having the parties resolve their disputes in New York.  *See Lever Bros. Co. v. Procter & Gamble Co.*, 23 F.Supp.2d 208, 211-12 (D. Conn. 1998).

Petitioner additionally makes the absurd argument that New York has no relationship to its petition to vacate the Arbitration Award, which was an award issued in a New York arbitration.  Nova Group Opp. at 14-15.  In fact, as a matter of law, New York is the sole locus of facts for Petitioner's vacatur action.  *Crow Construction Co. v. Jeffrey M. Brown Associates, Inc.*, 01 Civ. 3839 (AGS), 2001 WL 1006721, at *3-4 (S.D.N.Y. Aug. 31, 2001).  This is because the facts as found by the Arbitrator are not subject to re-litigation in a vacatur proceeding.  *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 Fed. Appx. 40, 43 (2d Cir. 2006) (argument that Arbitrator disregarded evidence is not a ground for vacatur).

Further, Petitioner unilaterally chose New York as the location of the arbitration, demonstrating that it can conveniently litigate in New York.  *See* March 10 Universitas Memo at 12.  Even if the physical location of Petitioner had any bearing on the arbitration (Nova Group Opp. at 3-4, 14-15), Petitioner cannot prove that it is has an office in Connecticut.  Petitioner is, by its own admission, a shell company with no employees, which contracts out all of its operations to Benistar Admin. Services, Inc., a sister entity.[7]  December Tr. at 462, 469, attached as April 28 Colbath Decl., Ex. 2.  Further, although Petitioner represents to this Court that it maintains an office in Simsbury, Connecticut (Nova Group Opp. at 4), when Universitas recently attempted to serve papers at Petitioner's purported "office," the process server found Petitioner's

---

[7] While Petitioner claims that the Plan is "administered, managed and directed" from Connecticut, it has not given any indication that Universitas' money is located in Connecticut.  Further, Petitioner has defied the January 24, 2011 Arbitration Award directing it to deposit the amount of the Award – about $26.5 million – in an escrow account at its law firm in Hartford, Connecticut.  April 28 Colbath Decl. at ¶5; March 10 Colbath Decl., Ex. 6 at 13-14.

7

offices to be abandoned.[8]  *See* March 21, 2011 Affidavit of Attempted Service, attached as April 28 Colbath Decl., Ex. 3.  Petitioner does not appear to maintain a legitimate office in Connecticut, and it should not be heard to claim that Connecticut has an interest in protecting one of its "citizens."  Nova Group Opp. at 3.

      b.  *The first-filed doctrine does not apply in this action*

As an initial matter, the first-filed doctrine, by which courts in certain situations grant priority to the first filed of two competing lawsuits, is not a strict mandate.  *See N.Y. Marine & Gen. Ins. Co. v. La Farge North Am., Inc*., 599 F.3d 102, 112 (2d Cir. 2010).  Courts should not be "slavish" to the first-filed doctrine and should "examine the circumstances closely to determine if there are special considerations" warranting its disregard, including whether there has been a minimal time difference between the filing of the two competing actions and/or the second-filed litigation has progressed further than the first.  *Cummings & Lockwood, P.C. v. Simses*, Civ. 01 CV 422 (PCD), 2001 WL 789313, at *6-8 (D. Conn. July 5, 2001) (denying motion to dismiss under first-filed doctrine, where, *inter alia*, second action involving same parties and issues as first action was filed 12 days after the first); *see also Muller v. Walt Disney Prods*., 822 F. Supp. 1033, 1040 (S.D.N.Y. 1993); *Cooperative Centrale Raiffeisen-Boreenleen Bank, B.A. v. Northwestern Nat'l Ins. Co of Milwaukee, Wisconsin*, 778 F. Supp. 1274, 1278 (S.D.N.Y. 1991).  Indeed, courts have refused to follow the first-filed doctrine where the first forum did not clearly have jurisdiction over one of the parties.  *See, e.g.*, *AFA Dispensing Group B.V. v. Anheuser-Busch, Inc*., 740 F. Supp.2d 465, 471 (S.D.N.Y. 2010).  In addition, courts refuse to follow the first-filed doctrine where the § 1404(a) "balance of conveniences" favors the

---

[8] Petitioner's apparent abandonment of its offices at 100 Grist Mill Road in Simsbury, Connecticut may be the result of a federal raid on those offices in April 2010.  *See* Docket Entry No. 1 in *Pettibone Tavern LLC v. Commissioner of Internal Revenue*, pending in the District of Connecticut (Case No. 3:10-mc-00064-AVC).


second-filed forum or where special circumstances exist. *N.Y. Marine & Gen. Ins. Co.,* 599 F.3d at 112-113.

This Court should disregard the first-filed doctrine for at least <u>three</u> reasons: (1) this Court lacks jurisdiction over Universitas, (2) the § 1404(a) factors militate strongly toward transfer to the Southern District of New York (s*ee* March 10 Universitas Memo at 11-17), and (3) special circumstances exist here to disregard the first-filed doctrine.

Indeed, Petitioner's filing in Connecticut is classic forum shopping. The only connection with Connecticut in this matter is that Petitioner purports to be located here. Courts in this Circuit have found that such a tenuous connection supports a finding of forum shopping, where the arbitration took place in a different state. *See*, *e.g.*, *U.S. Offshore, Inc. v. Seabulk Offshore, Ltd.,* 753 F. Supp. 86, 89 (S.D.N.Y. 1990).

Second, this case is the product of an improper anticipatory filing and race to the courthouse. After having insisted on arbitration in New York, Petitioner sued in Connecticut the day it received the Arbitration Award simply to harass Universitas. *See* March 10 Universitas Memo at 16-17; *see also Cooperative Centrale*, 778 F. Supp. at 1278 (refusing to stay second action filed weeks after first action, where first-action plaintiff knew it did not intend to pay the sums and that other party would sue to collect); *Girl Scouts of the USA v. Steir*, 02 CV 4830 (KMW), 2003 U.S. Dist LEXIS 24582, at * 4-6 (S.D.N.Y. Sept. 4, 2003). Petitioner knew Universitas would seek to confirm the award and have judgment entered thereon.[9] Indeed, the "race" to the courthouse undertaken by Petitioner is apparent through its hastily thrown together Application to this Court, which was largely copied and pasted from a legal memorandum it filed in the Arbitration, so much so that there are numerous exhibits and transcript citations included

---

[9] In addition, the Award specifically granted Universitas the ability to proceed in court to protect its interests, putting Petitioner on notice of litigation. March 10 Colbath Decl., Ex. 6 at 13-14.

in the Application with absolutely no explanation or attachment of said exhibits or transcripts. These omissions render Petitioner's filing an incoherent nullity that should not be accorded any deference as a "first-filed" action. *See Laxman v. Shapiro*, 06 Civ. 11408 (DLC), 2006 WL 3423807, at *2 (S.D.N.Y. Nov. 29, 2006) (first-filed action was improper anticipatory suit where there were numerous technical deficiencies and factual omissions in the complaint, "indicating that it was prepared in haste").

Finally, as discussed *supra* at 6-7, the New York action involving the same parties and issues is in a more advanced stage than this action. *See Cooperative Centrale*, 778 F. Supp. at 1278 (first-filed doctrine not applicable where "the later filed suit has moved further along the road" than the first-filed suit). Thus, to the extent the first-filed doctrine seeks to avoid waste of litigant and judicial resources, it should be disregarded where, as here, the "second-filed" action has progressed much further than the first.

Dated: Bridgeport, Connecticut
April 28, 2011

By   */s/ James T. Shearin*
James T. Shearin (CT 01326)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Phone:  203-330-2240
jtshearin@pullcom.com

Paula K. Colbath (*pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895

*ATTORNEYS FOR RESPONDENT*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 28, 2011, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                                  */s/ James T. Shearin*
                                                  James T. Shearin – ct 01326

ACTIVE/74435.1/JTS/2452408v1