# EXHIBIT 1

```
 1
 2
         THE AMERICAN ARBITRATION ASSOCIATION
 3
             AAA Case No. 13 195 Y 1558 10
 4
         IN THE MATTER OF THE ARBITRATION BETWEEN
 5
      ------------------------------------------
 6
      UNIVERSITAS EDUCATION, LLC,
 7          Claimant,
 8       vs.
 9    NOVA GROUP, INC.,
10          Respondents.
11    ------------------------------------------
12
                         VOLUME II
13
14
15          TRANSCRIPT of the stenographic
16    notes of the proceedings in the
17    above-entitled matter, as taken by and
18    before TAB PREWETT, a Registered
19    Professional Reporter, a Certified
20    Shorthand Reporter, a Certified LiveNote
21    Reporter, and Notary Public, held at the
22    Offices of EPSTEIN, BECKER & GREEN LLP, 250
23    Park Avenue, New York, New York, on
24    Tuesday, December 7, 2010, commencing at
25    8:32 a.m.
```

Page 686

1 Universitas v. Nova
2 done business with the plan before; or, if
3 he hasn't or didn't have any, he can
4 say, "Please send me one."
5 Q Do you have anything -- do you
6 have any written procedures that the
7 Barbara Korfels of the world who worked on
8 this know what to do? Is there anything in
9 writing?
10 A I don't know for sure. I mean,
11 we have a lot of procedures. We passed --
12 BASI, that is, passed part two SAS 70, so
13 PriceWaterhouseCoopers gave us that
14 designation. So, obviously, we know what
15 we are doing in this business.
16 I would presume there is a
17 procedure somewhere along those lines, but
18 I haven't seen it. And I don't have
19 personal knowledge of it because that's not
20 my side of the business.
21 Q You said "more likely than not"
22 the person would be advised that a claim
23 form was required.
24 Do you recall that?
25 A Yes.

Page 687

1 Universitas v. Nova
2 Q Okay. What's the basis for
3 your "more likely than not"?
4 A Just personal experience.
5 When Ivan Schinderman contacted
6 me, I told him:
7 "You have got to follow the
8 claim form," several times.
9 And he represented Universitas.
10 That's my only experience in dealing with
11 beneficiary's claim.
12 Q So it's your testimony --
13 Mr. Schinderman is dead, right?
14 A Yes.
15 Q Right?
16 A Yes.
17 Q So it's your testimony that --
18 on how many occasions did you tell him to
19 file a claim form?
20 A I may not have said "claim
21 form." I might have just said:
22 "File a claim with the trust."
23 And we talked probably 20 times
24 over a six- to eight-month period; so I
25 probably told him the first two or three

Page 688

1 Universitas v. Nova
2 times.
3 Q Was anyone else -- was this in
4 person?
5 A In person, on the phone, over
6 drinks, over dinner. It may have been one
7 of the lunches at the Harvard Club with
8 Arthur -- that's Arthur Michaelson of
9 Hoffheimer, and Don Trudeau as well.
10 Q Okay. So there was a lunch at
11 the Harvard Club?
12 A There were more -- there were
13 several lunches at the Harvard Club.
14 Q Well, did you tell
15 Mr. Schinderman to file the claim forms at
16 all of the lunches at the Harvard Club?
17 A No, I said that, over my six-
18 to nine-month history of communicating with
19 Mr. Schinderman, both in person, over the
20 phone, whatever, the first two or three
21 times, one of which may have been the lunch
22 at the Harvard Club, I said:
23 "You have to file a claim with
24 the trust."
25 Q Okay. I want to get as much

Page 689

1 Universitas v. Nova
2 detail on each of those times as possible.
3 So let's start with the first time you told
4 Mr. Schinderman to file the forms.
5 Where were you, and where was
6 he?
7 A I was probably in my office,
8 and he called me. The very first time I
9 even heard of Ivan Schinderman was when he
10 just called me up out of the blue. This
11 was in -- right after Mr. Spencer died,
12 kind of around like the late June of 2008,
13 somewhere right around the 4th of July, I
14 think, I remember, somewhere in there.
15 Q Okay. Do you have a specific
16 recollection of a telephone call around
17 July 4th --
18 A No.
19 Q -- 2008?
20 A No. Don't pin me down to a
21 specific date. It was sometime --
22 Q I said, "around July 4th." But
23 go ahead.
24 A It could have been in June.
25 Q Okay.

73 (Pages 686 to 689)

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022

Page 698

1  Universitas v. Nova
2  later that summer. It may have been at a
3  dinner we had. Just so you know, he and I
4  had each other cell phones. He would call
5  me on the weekends. He would call me at
6  night.
7        You know, he would call me just
8  to talk about stuff that had nothing to do
9  about Universitas. I mean, at that point,
10 I only met the guy once or twice; so I
11 don't know whether he thought of me as his
12 personal friend.
13       I was just trying to help the
14 guy out because he represented a
15 beneficiary under the plan.
16       But, you know, that kind of
17 relationship was continued. So by the time
18 August/September rolled around, we had
19 had -- you know, I had bought him dinner at
20 the Harvard Club a couple of times, drinks.
21 We'd have drinks after work when I am in
22 the City.
23       We probably had met half dozen,
24 a dozen times by then. And it was around
25 one of those times I even -- he would kind

Page 699

1  Universitas v. Nova
2  of say:
3        "What's going on, you know,
4  with the widow and Holding Capital?"
5        And I said:
6        "Well, it seems like you guys
7  are making progress, but don't forget. You
8  know, you are the beneficiary. You still
9  have to file the claim form."
10       And he said:
11       "I understand."
12    Q   So, now, the second time you
13 told him, "Don't forget; you still have to
14 file the claim form," it's in the
15 August/September 2008 time frame?
16    A   Yes, somewhere around there.
17 It was either right before Labor Day or
18 right after. I can't remember.
19    Q   Okay. Both of you sitting at
20 the Harvard Club?
21    A   Well, I can't say it was at the
22 Harvard Club or not. It could have been at
23 the Harvard Club. I know we had drinks
24 sometimes at Grand Central Station when I
25 would go back to Connecticut. So in one of

Page 700

1  Universitas v. Nova
2  our discussions in person, that's when it
3  happened.
4     Q   Anyone else present that could
5  verify this?
6     A   Nope, not at that one. But at
7  the later one, Arthur could because I said
8  it at the dinner -- at the luncheon table
9  at the Harvard Club with Don Trudeau and
10 Arthur Michaelson sitting there.
11       And I said:
12       "Listen, you guys can have all
13 the battles and disputes you want, but
14 Universitas is the beneficiary. And in
15 order to get the claim perfected, it has to
16 got to file a claim."
17    Q   Okay.
18    A   And that was in the fall
19 sometime in September, early October.
20    Q   I -- okay. I still want to
21 focus on this conversation that you had
22 around Labor Day 2008 with no one present
23 except Ivan, who is dead.
24       When you said to him, "Ivan,
25 don't forget; you have got to file those

Page 701

1  Universitas v. Nova
2  claim forms," what did he say?
3     A   He said:
4        "I understand, but I am still
5  negotiating with Arthur. And Holding
6  Capital is beating me up; and, you know, my
7  people -- my people at Universitas are kind
8  of betwixt and between and I'll get around
9  to it."
10       That's basically what it was.
11 I am paraphrasing.
12    Q   Right.
13    A   I am not giving you the exact
14 words, but that was the extent of it.
15 Filing a claim was the least of his
16 concerns at that point.
17    Q   But this time he said, "I will
18 get around to it," right?
19    A   Yes.
20    Q   So he wasn't saying:
21       "Don't me send me the claim
22 forms."
23       He was actually contemplating
24 filing a claim, according to you?
25    A   He didn't ask for it, but he

76 (Pages 698 to 701)

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022

```
 1
 2
            THE AMERICAN ARBITRATION ASSOCIATION
 3
                 AAA Case No. 13 195 Y 1558 10
 4
           IN THE MATTER OF THE ARBITRATION BETWEEN
 5
      ------------------------------------------------
 6
      UNIVERSITAS EDUCATION, LLC,
 7            Claimant,
 8        vs.
 9     NOVA GROUP, INC.,
10            Respondents.
11     ------------------------------------------------
12
                            VOLUME III
13
14
15            TRANSCRIPT of the stenographic
16     notes of the proceedings in the
17     above-entitled matter, as taken by and
18     before TAB PREWETT, a Registered
19     Professional Reporter, a Certified
20     Shorthand Reporter, a Certified LiveNote
21     Reporter, and Notary Public, held at the
22     Offices of EPSTEIN, BECKER & GREEN LLP, 250
23     Park Avenue, New York, New York, on
24     Wednesday, December 8, 2010, commencing at
25     9:18 a.m.
```

| Page 843 | Page 845 |
|---|---|
| 1  Universitas v. Nova | 1  Universitas v. Nova |
| 2  This happens in the insurance business all | 2  Q   Right. |
| 3  the time, which is why carriers and plans | 3  A   Which is not the official |
| 4  require that you, the beneficiary, tell us | 4  address for filing a claim with Nova Group. |
| 5  exactly who it is that you want us to talk | 5  Q   Okay. But you had been having |
| 6  to and/or if necessary send the money to. | 6  ongoing discussions with him. When you got |
| 7  Q   Sir, from the date of death | 7  this, did you -- did you find it odd that |
| 8  through February 25, 2009, did you | 8  he didn't address the letter to you and he |
| 9  communicate with any other lawyer who told | 9  addressed it to the "Charter Oak Trust, |
| 10  you that they represented Universitas | 10  care of the Nova Group, Inc."? |
| 11  Education LLC? | 11  A   No, because I think -- I |
| 12  A   No. | 12  believe I sent a letter, Nova Group, Inc., |
| 13  Q   There was no confusion in your | 13  using that address. I believe the July 23, |
| 14  mind on February 25, 2009, that Ivan | 14  2008 letter has that address; so, no, I |
| 15  Schinderman represented Universitas | 15  didn't find it odd at all. |
| 16  Education LLC, right? | 16  Q   Okay. And then -- and then |
| 17  A   No confusion in my mind, but | 17  Mr. Schinderman in his letter also cc's |
| 18  that doesn't mean that, for all I knew, | 18  Mr. Trudeau, Mr. Bursey, and you, correct? |
| 19  Universitas could have fired Ivan a week | 19  A   Correct. |
| 20  before he sent this letter. That's why we | 20  Q   And had Mr. Schinderman to your |
| 21  asked for the information. | 21  knowledge at that point had any |
| 22  Q   And Mr. Michaelson never | 22  communications with Mr. Trudeau? |
| 23  represented to you that he represented | 23  A   Yes. |
| 24  Universitas Education LLC, right? | 24  Q   Okay. What discussions were |
| 25  A   Right. | 25  those? |

| Page 844 | Page 846 |
|---|---|
| 1  Universitas v. Nova | 1  Universitas v. Nova |
| 2  Q   Did you see this letter on or | 2  A   They were two or there |
| 3  about February 25, 2009? | 3  luncheons that I hosted at the Harvard Club |
| 4  A   I have no reason to doubt it. | 4  in New York where Mr. Trudeau, |
| 5  Q   Do you have any understanding | 5  Mr. Schinderman, Mr. Michaelson, and I |
| 6  why Mr. Schinderman sent this letter with | 6  attended, so, yes, those were |
| 7  this information to the Charter Oak Trust, | 7  communications. |
| 8  care of the Nova Group, Inc., instead of | 8  Q   Other than those communications |
| 9  addressing it to you? | 9  that you were present, do you know if |
| 10  A   I'm sorry. Can you read the | 10  Mr. Schinderman had any other |
| 11  question back. | 11  communications with Mr. Trudeau? |
| 12  Q   Yes, I will say it again. You | 12  A   I believe there may have been |
| 13  and Mr. Schinderman had been having ongoing | 13  one or two that Don told me about. And I |
| 14  discussions, correct? | 14  was kind of upset about it because I told |
| 15  A   Correct. | 15  Don that he shouldn't be communicating |
| 16  Q   Okay. Yet, on February 25, | 16  directly with Mr. Schinderman, that I |
| 17  2009, Mr. Schinderman sends this letter to | 17  should be doing that. |
| 18  the Charter Oak Trust, care of the Nova | 18  So I think, after the one or |
| 19  Group, Inc.; and as I stated we put the | 19  two communications, it was ceased. And |
| 20  "re:" into the record. He doesn't address | 20  then from then on, Ivan would only talk to |
| 21  the letter directly to you? | 21  me. |
| 22  A   No. | 22  Q   Why was it that you wanted all |
| 23  Q   Did you find that odd? | 23  communications to go through you? |
| 24  A   No, but he sends it to my | 24  A   Well, because Ivan is a lawyer |
| 25  address. | 25  and Don isn't. |

13 (Pages 843 to 846)

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022

| | |
|---|---|
| Page 1179<br>1  Universitas v. Nova<br>2  Q  Because you had authorized<br>3  Hutchison in December, right, to show draft<br>4  documents to --<br>5  A  The broker.<br>6  Q  -- Mr. Mactas?<br>7     Oh, you didn't know it was --<br>8  A  No, I didn't know his name. I<br>9  just knew it as "the broker."<br>10 Q  So you knew of him?<br>11 A  I knew of his existence as a<br>12 broker.<br>13 Q  Okay.<br>14 A  I didn't know his name was<br>15 Bruce Mactas.<br>16 Q  Now, you suggested -- or I<br>17 think you stated affirmatively in your<br>18 direct that some representatives -- I think<br>19 you attributed it Ivan Schinderman -- had<br>20 at least a draft of the trust document,<br>21 right?<br>22    Well --<br>23 A  Yes, he had the trust document,<br>24 yes.<br>25 Q  And this is when you were at | Page 1181<br>1  Universitas v. Nova<br>2  A  Depends which Harvard lunch we<br>3  are talking about, there were two or three<br>4  of them, I think.<br>5     Prior to the July 23rd letter,<br>6  July 23, 2008, I probably would not have<br>7  gotten him a document. But I am certain<br>8  that, subsequent to -- before the next<br>9  luncheon, he definitely had one.<br>10 Q  Well, remember, we looked at --<br>11 and I think Mr. Order looked at it as<br>12 well -- the February 25, 2009 letter where<br>13 you said that Mr. Schinderman's tone<br>14 changed.<br>15    And that letter, at least part<br>16 of the focus was:<br>17    "Get me the documents to<br>18 substantiate this 6.0 provision."<br>19    Do you recall that?<br>20 A  Yes.<br>21 Q  Okay. So as of 2/25/09,<br>22 Mr. Schinderman did not have what the plan<br>23 calls its "final" document?<br>24 A  No, I disagree. I think that's<br>25 why he was sending that letter to |
| Page 1180<br>1  Universitas v. Nova<br>2  the Harvard Club, and he was ready to pull<br>3  something out; but you didn't really see it<br>4  because of the rule. But you think it was<br>5  the trust document, right?<br>6  A  Well, I said -- we were talking<br>7  about the trust document. He said:<br>8     "Here, let me pull it out and<br>9  check."<br>10    I said:<br>11    "No, no, no, you can't do<br>12 that."<br>13 Q  Okay.<br>14 A  So I am assuming it wasn't, you<br>15 know, tickets to the New York Yankees game<br>16 or something.<br>17 Q  And that draft that -- the<br>18 document that he had do, you know if it was<br>19 the version with the 20 percent hold-back?<br>20 A  No, I didn't see it, so I don't<br>21 know.<br>22 Q  And how would Mr. Schinderman<br>23 have gotten a copy of the trust with the<br>24 20 percent hold-back? Had you given him a<br>25 copy by the time of the Harvard lunch? | Page 1182<br>1  Universitas v. Nova<br>2  say, "What is the basis for the 20 percent<br>3  withhold?"<br>4  Q  Okay.<br>5  A  That's the way I read that<br>6  letter. We can look at it and discuss it<br>7  further, but -- what exhibit is it?<br>8  Q  Hold on.<br>9     MR. ORDER: 418, I think.<br>10    MS. COLBATH: 418.<br>11 A  Thank you.<br>12 Q  So looking at 418, does this<br>13 refresh your recollection about furnishing<br>14 Mr. Schinderman with a copy of what the<br>15 plan considers its final document?<br>16 A  It doesn't because it really<br>17 doesn't address that issue. But I am sure<br>18 that, when I received this letter, it was<br>19 because he was complaining about the<br>20 20 percent provision, which he wouldn't<br>21 have known about unless he had had the<br>22 final official plan document that had the<br>23 20 percent.<br>24 Q  Well, look at 420, which is<br>25 when he writes to you on March 5th. And he |

97 (Pages 1179 to 1182)

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022